No. 22-14254-J

# In the United States Court of Appeals
# for the Eleventh Circuit

―――――――

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

YEISON SALAZAR ARIAS,

*Defendant-Appellant*.

―――――――

On Appeal from the United States District Court
for the Middle District of Florida, Tampa Division
Case No. 8:18-Cr-82-SCB-CPT-3
Hon. Susan C. Bucklew

―――――――

## INITIAL BRIEF OF YEISON SALAZAR ARIAS

―――――――

Jeffrey G. Brown, Esq.
BROWN DOHERTY LITTLE
450 Carillon Parkway, Ste. 120
St. Petersburg, FL 33716
(727) 299-0099 T
FBN 832431
jeff@lawbdl.com
Attorney for Defendant-Appellant

DATED: March 24, 2023

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rules 26.1-1 and 26.1-3, the following is an alphabetical list of the trial judges, attorneys, persons, and firms with any known interest in the outcome of this case.

1. Amador, Jr., Pedro – former counsel for Defendant/Appellant;

2. Baeza, Daniel M. – Assistant United States Attorney;

3. Benjumea Colorado, Cristhian Felipe – co-defendant;

4. Brown, Jeffrey G. – Trial Counsel for Defendant/Appellant;

5. Bucklew, Susan C. – United States District Court Judge;

6. Camareno, Bryant R. – Trial counsel for co-defendant, *Cardona Marin*;

7. Cardona Marin, Santiago – co-defendant;

8. Cavalluzzi, Nicholas – co-defendant;

9. Cohen, Mark I. – Trial counsel for co-defendant, *Cavalluzzi*;

10. Corrales Velasquez, Diego Alejandro – co-defendant;

11. Escobar, Richard – Trial counsel for co-defendant, *Henao*;

12. Felman, James E. – Trial counsel for co-defendant, *Cavalluzzi*;

13. Giasi, Michael A. – Trial counsel for co-defendant, *Rincon Enriquez*;

14. Gomez Vallejo, Jorge Andres – co-defendant;

15. Handberg, Roger B. – United States Attorney;

16. Henao, Michael Gabriel – co-defendant;

i

17. Hoppmann, Karin – former Acting United States Attorney;

18. Kapusta, Julia R. – Assistant United States Attorney, Appellate Division;

19. Kovachevich, Elizabeth A. – United States District Court Judge;

20. Linares Nino, Segis Oswaldo – co-defendant;

21. Lopez, Maria Chapa – former United States Attorney;

22. Maddux, Michael P. – Trial counsel for co-defendant, *Corrales Velasquez*;

23. McKay, Peter A. – Trial counsel for co-defendant, *Linares Nino*;

24. Mieczkowski, Sara L. – Trial counsel for co-defendant, *Gomez Vallejo*;

25. Rincon Enriquez, Juan David – co-defendant;

26. Salazar Arias, Yeison – Defendant/Appellant;

27. Tuite, Christopher P. – United States Magistrate Judge.


March 24, 2023                                    _____*/s/ Jeffrey G. Brown*_____
                                                 JEFFREY G. BROWN, ESQ.

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant, Yeison Salazar Arias ("Arias"), respectfully requests oral argument in this matter.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS.........................................................i

STATEMENT REGARDING ORAL ARGUMENT ...........................................iii

TABLE OF CITATIONS ................................................................................ vi

STATEMENT OF SUBJECT-MATTER AND APPELLATE
JURISDICTION................................................................................... viii

STATEMENT OF THE ISSUES ...................................................................... 1

STATEMENT OF THE CASE ......................................................................... 2

     A.   *Factual Background* ......................................................... 2

     B.   *Procedural Background*…………………………………………………4

     C.   *Presentence Investigation Reports*...................................... 5

     D.   *Sentencing*.................................................................... 7

STANDARD OF REVIEW............................................................................. 12

SUMMARY OF THE ARGUMENT ................................................................. 13

ARGUMENT AND CITATIONS OF AUTHORITY ........................................... 14

  I.   THE GOVERNMENT BREACHED THE TERMS OF
      ARIAS' PLEA AGREEMENT, RENDERING THE
      PLEA AGREEMENT INVALID, BY
      DEMONSTRATING BAD FAITH IN ITS REFUSAL
      TO MOVE FOR A THIRD LEVEL FOR ACCEPTANCE
      OF RESPONSIBILITY .................................................................... 14

  II.   THE DISTRICT COURT ERRED IN DETERMINING
      ARIAS WAS A MANAGER OR SUPERVISOR OF THE
      CONSPIRACY ............................................................................ 19

CONCLUSION ................................................................................ 23

CERTIFICATE OF COMPLIANCE .................................................... 24

CERTIFICATE OF SERVICE ............................................................ 25

# TABLE OF CITATIONS

**Cases**                                                                              **Page(s)**

United States v. Boatner,
    966 F.2d 1575 (11th Cir. 1992) ........................................................ 14

United States v. Copeland,
    381 F.3d 1101 (11th Cir. 2004) ...................................................... 12

United States v. Dominguez,
    661 F.3d 1051, 1061 (11th Cir. 2011)............................................. 12

United States v. Evans,
    958 F.3d 1102, 1109 (11th Cir. 2020)............................................. 20

United States v. Howle,
    166 F.3d 1166 (11th Cir. 1990) ...................................................... 14

United States v. Hunter,
    835 F.3d 1320 (11th Cir. 2016) ...........................................14, 15, 16

United States v. Jeffries,
    908 F.2d 1520 (11th Cir. 1990) ...................................................... 15

United States v. Philidor,
    717 F.3d 883, 885 (11th Cir. 2013) ................................................ 21

United States v. Puentes-Hurtado,
    794 F.3d 1278 (11th Cir. 2015) ...................................................... 15

United States v. Rewis,
    969 F.2d 985 (11th Cir. 1992) ........................................................ 14

United States v. Rodriguez,
    732 F.3d 1299, 1305 (11th Cir. 2013)............................................. 20

United States v. Shabazz,
    887 F.3d 1204, 1222 (11th Cir. 2018)............................................. 12

United States v. Thomas,
 487 F.3d 1358 (11th Cir. 2007) ........................................................ 15

**Statutes**

18 U.S.C. § 3231 ........................................................................... vii

18 U.S.C. § 3238 ............................................................................ 4

18 U.S.C. § 3553 ........................................................................... 11

21 U.S.C. § 960(b)(1)(A) ................................................................ 4

21 U.S.C. § 960(b)(1)(B)(ii) ........................................................... 4

21 U.S.C. § 963 ............................................................................. 4

28 U.S.C. § 1291 .......................................................................... vii

**Sentencing Guidelines**

U.S.S.G. § 2D1.1(b)(18) .................................................................. 5

U.S.S.G. § 3B1.1(b) ................................................................... 6, 20

U.S.S.G. § 3E1.1 ................................................................. *in passim*

U.S.S.G § 3E1.1(a) ............................................................... 5, 6, 16

U.S.S.G. § 5K1.1 ............................................................... *in passim*

U.S.S.G. § 3E1.1(b) ............................................................ *in passim*

U.S.S.G. § 5C1.2 ........................................................................... 5

## STATEMENT OF SUBJECT-MATTER
## <u>AND APPELLATE JURISDICTION</u>

The District Court had subject-matter jurisdiction under 18 U.S.C. § 3231 because Arias was charged pursuant to an Indictment (Doc. 1) for violations of federal criminal laws. This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the District Court entered a final Judgment (Doc. 410), which Arias timely appealed (Doc. 414).

## STATEMENT OF THE ISSUES

**1.**    *Whether the Government breached the terms of Arias' Plea Agreement thereby rendering the Plea Agreement invalid by demonstrating bad faith in refusing to move for a third level for acceptance of responsibility?*

**2.**    *Whether the District Court erred in determining Arias was a manager or supervisor of the conspiracy?*

## STATEMENT OF THE CASE

### *Factual Background*[1]

In the Spring of 2016, Colombian authorities along with the United States Drug Enforcement Administration ("DEA") used a confidential source, Jose Giraldo ("CS Giraldo"), to create a drug trafficking organization ("DTO") (Doc. 403, p. 4) with the Appellant, who was of course unaware CS Giraldo was working as a confidential source. CS Giraldo and the Appellant teamed up with investors (for financing) and other drug traffickers (for the cocaine and/or heroin and to learn how to conceal the drugs in packages) to ship narcotics to Australia.

CS Giraldo, upon instructions from his DEA handlers, insisted that all cocaine and/or heroin shipments had to go through the United States first (Doc. 403, pp. 4-5) and CS Giraldo introduced an undercover agent posing as a Fed Ex employee to assist in shipping all the cocaine/or heroin to Tampa first before reaching other destinations; consequently, all the cocaine and/or heroin was intercepted by law enforcement.

When the initial shipments of cocaine and/or heroin were seized at the airport in Colombia, authorities began to identify all the individuals involved. They identified an individual named Segis Linares Nino ("Linares") as the organizer and leader of the DTO. He was the one responsible for much of the financing and the

---

[1] Arias' *Factual Background* as to the underlying facts of the conspiracy is derived from the Record on Appeal contained within the Appendix at Docs. 393 and 403 (including 403-1 through 403-6).

sources to acquire cocaine and heroin.  Linares almost exclusively handled his business through his "right hand man," Jorge Gomez Vallejo ("Gomez").  Juan Rincon Enriquez ("Rincon") and Santiago Cardona Marin ("Cardona") were two other investors that were involved primarily before Linares.

Below Linares, Gomez, Rincon, and Cardona within the hierarchy of the DTO was Diego Corrales Velasquez ("Velasquez").  Velasquez worked in a non-managerial and non-supervising role for Gomez that would include packaging the cocaine or heroin for shipment (usually in batteries, computers, lights, solar panels, and/or liquid jugs).  Velasquez, in turn, taught Arias how to do the same job that he did, so Velasquez and Arias were at the bottom of the hierarchy of the DTO.

Throughout the investigation CS Giraldo was responsible for organizing the conspiracy while being a paid informant.  (Doc. 403, p. 4) CS Giraldo along with Arias invited Linares, Gomez, Cardona, and Rincon to join the conspiracy.  (Id.)  In addition, CS Giraldo kept a log of the transactions, provided the addresses for shipment to Tampa, Florida, and recruited people to actually fill out the labels and deliver the packages to Fed Ex.

CS Giraldo coordinated the shipments, packaged by Arias containing the drugs, to be sent to a Tampa address that the DEA provided. It is believed that all the other packages in this case were intercepted at the Colombian airport and remained there.

*Procedural Background*

On February 21, 2018, a Federal Grand Jury in Tampa, Florida, returned a four-count Indictment charging Arias and his co-defendants with violations of Federal law.  (Doc. 1).  Arias was charged in Count One with conspiracy to distribute and possess with the intent to distribute heroin and cocaine knowing, intending, and having reasonable cause to believe that such substance would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 963, 960(b)(1)(A) and (b)(1)(B)(ii), and 18 U.S.C. § 3238.  Arias was not charged in any other counts of the Indictment.

On August 16, 2022, Arias appeared before the District Court and, pursuant to a written Plea Agreement (Doc. 387), entered a guilty plea as to Count One of the Indictment but to a lesser amount so that the minimum mandatory was reduced from 10 years to five years.

Specifically in the Plea Agreement, Section A.7 set-forth the Government's promises to Arias related to his acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.  (Doc. 387, p. 4-5).  The Government's promises set-forth in Section A.7 of the Plea Agreement influenced Arias' decision to enter his guilty plea in this matter including the reduction of one point on his guidelines for not making the Government have to prepare for trial.

Pursuant to Section A.7 of the Plea Agreement the Government agreed that

"at the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a)." Further, Section A.7 of the Plea Agreement provided that if "at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of U.S.S.G. §3E1.1(b) and all terms of this Plea Agreement . . . the United States agrees to file a motion pursuant to U.S.S.G. §3E1.1(b) for a downward adjustment of one additional level."

### *Presentence Investigation Reports*

On October 11, 2022, United States Probation submitted its Initial Presentence Investigation Report ("Initial PSR") in connection with this matter. (Doc. 392).

Relevant to this Appeal[2], Paragraph 54 of the Initial PSR addressed whether Arias satisfied the criteria set-forth in U.S.S.G. § 5C1.2 and was therefore entitled to a two-level downward adjustment pursuant to U.S.S.G. § 2D1.1(b)(18). Probation's position was that Arias did not truthfully debrief and he has an

---

[2] Arias also filed written objections to Probation's calculations of the drug quantities attributable to him, however, those objections were resolved in Arias' favor and are not a basis of this Appeal.

aggravated role adjustment, and therefore, was ineligible for a two-level safety valve reduction.

Paragraph 56 of the Initial PSR represented a three-level upward adjustment as a result of Arias being classified as a manager or supervisor pursuant to U.S.S.G. § 3B1.1(b).

Finally, Paragraphs 60 and 61, combined, represented a two-level reduction in Arias' offense level based on his acceptance of responsibility in this matter, and a one-level reduction for not making the Government have to prepare for trial all pursuant to U.S.S.G. §§ 3E1.1(a) and (b).

On October 25, 2022, Arias submitted written objections to the Initial PSR. (Doc. 412 pp. 29-33). In his objections, Arias argued that he was not a manager or supervisor and therefore should not receive an aggravating role adjustment; that he should receive a minor role reduction based on his limited conduct in the conspiracy, that he truthfully debriefed, and as a result of the foregoing, he should receive an additional two-level downward adjustment for safety-valve.

Notably, the Government did not file any formal written objections to the Initial PSR. (Doc. 412 p. 26).

On November 8, 2022, Probation submitted its Revised PSR and within the PSR disregarded all of Arias' objections. (Doc. 394).

*Sentencing*

Sentencing in this matter began on November 29, 2022, and ultimately took three (3) days to complete.  On December 15, 2022, the second day of sentencing in this matter, the Government called a single witness, Casey Albanese, a Special Agent with the Drug Enforcement Administration.  (Doc. 430, p. 11).  The purpose of the Government calling Agent Albanese was to establish the drug quantities applicable to Arias as well as Arias' role in the offense.

On direct examination, Agent Albanese was asked numerous questions about the drug transactions involved in the conspiracy, the co-defendants' proffers, and the debriefs of the confidential source that was utilized by law enforcement in the prosecution of this matter.  Specifically, Agent Albanese testified that Alejandro Corrales Velasquez (Velasquez), Juan David Rincon Enriquez (Rincon), and Santiago Cardona Marin (Cardona) were co-defendants in this case.  (Doc. 430, p. 16:2-22).  Agent Albanese testified that Velasquez was an organizer and packager.  (Doc. 430, p. 16:6-8).  He further testified that Rincon was "from what [he] recall[ed]," an organizer/packager and facilitator of money.  (Doc. 430, p. 16:13-16).  Agent Albanese was also asked about Cardona who was an investor and a friend of Rincon.  (Doc. 430, p. 16:17-22).  Agent Albanese was then broadly asked who recruited Velasquez, Rincon, and Marin, in which he answered Arias "recruited" them.  (Doc. 430, p. 17:10-16).  There was no definition given to

how "recruited" was being used or any further description as to what exactly "recruited" entailed factually.

On cross-examination, Agent Albanese testified that he lacked personal knowledge of many facts of the case, including the fact that he was not present for any of the drug transactions (Doc. 430, p. 33:2-4) and was not present at any of the debriefings involving the confidential source (Doc. 430, p. 33:5-8). Further, Agent Albanese testified that he did not have any independent knowledge whether the law enforcement agents involved in debriefing the confidential source accurately documented what the confidential source was saying. (Doc. 430, p. 33:20-25).

Agent Albanese was also questioned by defense counsel about Rincon's proffer during which Rincon severely limited his role in the conspiracy by stating he was only involved in investing in one shipment. (Doc. 430, p. 37:12-19). According to Agent Albanese, Rincon identified Arias as a "street hustler" not his recruiter.

Agent Albanese further testified on cross-examination that Cardona also severely limited his role in the conspiracy by stating in his proffer he was only involved in  investing in one shipment.   He stated that when he initially met with Arias about investing, Arias was with a "connected" individual, the CS Giraldo, when he was asked to invest or to use Agent Albanese's word, "recruited."  (Doc. 430, p. 38:11-22).  So in sum, Agent Albanese offered no details from the proffers

about how supposedly Arias "recruited" Cardona but he did state CS Giraldo was with him at the meeting.

After Arias testified on his own behalf at Sentencing, the Court continued the Sentencing to December 20, 2022.

On December 19, 2022, the Government filed a "Notice of Withdrawal of Acceptance of Responsibility." (Doc. 406). In its Notice, the Government alleges that during Arias' testimony on December 15, 2022, he made false statements compared to the factual basis of the Plea Agreement. Because of these false statements, the Government took the position that Arias violated provisions of his Plea Agreement and therefore the Government did not agree that Arias fully accepted responsibility and therefore was not entitled to three levels of acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

On December 20, 2022, the Court reconvened the Sentencing in this matter. At the outset, the Court made factual findings as to the drug quantities and ultimately determined that Arias was responsible for "slightly more than 15 kilos," which would make him a level 32. (Doc. 432, p. 7:19-21). The Court next addressed the safety-valve issue. The Court relied on the Government's assertion - that Arias had not "truthfully debriefed, so he's not going to get [it] regardless." (Doc. 432, p. 8:5-7). Finally, the Court addressed Arias' role in the offense. The Court, based on the testimony of Agent Albanese, made a finding that Arias was

responsible for recruiting the investors Rincon and Cardona, and also the packager Velasquez, and concluded a managerial role enhancement of three-levels was appropriate.  (Doc. 432, p. 8:16-25).

The Court finally addressed the Government's refusal to move for the three levels of acceptance of responsibility.  The Government's position was that Arias had an obligation to comply with the Plea Agreement and that providing false testimony in comparison to the factual basis of the Plea Agreement violated the Plea Agreement.  (Doc. 432, p. 9:19-25).

In its Notice filed on December 19, 2022 (Doc. 406), the Government relied upon Sections A.8 and A.10.b of the Plea Agreement.  (Doc. 387).  Sections A.8 and A.10.b of the Plea Agreement relate directly to Arias' obligations in connection with any cooperation and/or substantial assistance with the Government.  Because Arias did not cooperate or provide substantial assistance to the Government, these sections of the Plea Agreement do not apply Arias and therefore should not accept his Acceptance of Responsibility.  The Court denied the Government's request not to give the two levels for Acceptance of Responsibility and awarded Arias the two-level departure.  As to the third level, the Court believed that was up to the Government not the Court.

Arias contended that as a result of the Government's refusal to move for the third level, the Government was in violation of the Plea Agreement since his

10

alleged false statements during his testimony at his Sentencing did not violate any provisions of the Plea Agreement regarding the third level of Acceptance of Responsibility because the third level was earned by not going to trial and making the Government have to prepare for trial.

The District Court made a finding that,

"[y]ou know, I'm not sure - - I mean, I don't disagree he testified differently, and I think he's minimizing his role in this offense. But I'm not sure - - we gave Mr. Gomez acceptance of responsibility. I thought he minimized his role . . . [s]o I'm going to give him the two levels for acceptance of responsibility, but then you have to move for the third level. I can't do that unless the Government moves. And you did - - I mean, you didn't have to go to trial. I mean, we had two lengthy hearings, but you didn't have to call witness. The only witness you called was the agent, who was less than spectacular."
(Doc. 432, p. 20:7-22).

The Government declined to move for the third level but urged the Court to give the third level as a variance under 18 U.S.C. § 3553 instead. (Doc. 432, p. 21:21-24). The Court declined the offer.

Ultimately, the Court determined that Arias had a Total Offense Level of 35 and a Criminal History Category I. Arias was sentenced to one hundred fifty-one months (151) in the Bureau of Prisons, followed by a term of five years supervised release. (Doc. 410).

This appeal follows Arias' judgment and sentence in this matter.

## STANDARD OF REVIEW

In determining whether the Government has breached a Plea Agreement, this Court conducts a *de novo* review.  United States v. Copeland, 381 F.3d 1101, 1104 (11th Cir. 2004).

A District Court's legal conclusions regarding the Sentencing Guidelines are reviewed *de novo*, and the Court's factual findings are reviewed for clear error.  See United States v. Dominguez, 661 F.3d 1051,1061 (11th Cir. 2011).

The imposition of an aggravating role enhancement is reviewed for clear error. United States v. Shabazz, 887 F.3d 1204, 1222 (11th Cir. 2018).

## <u>SUMMARY OF THE ARGUMENT</u>

The Government breached the terms of the Plea Agreement in bad faith. While the District Court concluded that Arias' testimony during his Sentencing was inconsistent with portions of the factual basis in his Plea Agreement, the Court nevertheless gave the Appellant the two-level departure for Acceptance of Responsibility. The Government erroneously concluded that those inconsistent statements were a basis for not moving for the third level of Acceptance of Responsibility and thus breached the Government's obligations pursuant to the Plea Agreement.

The District Court also erred in its factual findings and legal conclusion that Arias was a manager or supervisor of the conspiracy by simply concluding Arias "recruited" three others. The Government's only witness, an Agent, had no first-hand knowledge of the "recruiting" efforts used by Arias to bring three (3) co-defendants into the conspiracy and the record contains no facts to support or define "recruitment" thus the Government did not meet its burden of proof to support the enhancement that Arias was a manager or supervisor.

## ARGUMENT

**I. THE GOVERNMENT BREACHED THE TERMS OF ARIAS' PLEA AGREEMENT, RENDERING THE PLEA AGREEMENT INVALID, BY DEMONSTRATING BAD FAITH IN ITS REFUSAL TO MOVE FOR A THIRD LEVEL FOR ACCEPTANCE OF RESPONSIBILITY.**

This Honorable Court has continuously held that "a plea agreement is, in essence, a contract between the Government and a criminal defendant." United States v. Howle, 166 F.3d 1166, 1168 (11th Cir. 1999). In United States v. Rewis, this Court held that the terms of a Plea Agreement are interpreted based on what a defendant "could have reasonably understood the terms of his plea agreement to mean." 969 F.2d 985, 988 (11th Cir. 1992). "Whether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered the plea." United States v. Boatner, 966 F.2d 1575, 1578 (11th Cir. 1992). This Court "applies an objective standard to decide whether the government's actions are inconsistent with the defendant's understanding of the plea agreement, rather than reading the agreement in a "hyper-technical" or "rigidly literal" manner." United States v. Hunter, 835 F.3d 1320 (11th Cir. 2016) (internal citations omitted).

While an appellate waiver is included in Arias' Plea Agreement, his arguments are not barred in the present matter. "As traditional contract principles generally apply to plea agreements, appellate review is also permitted when a defendant claims that the government breached the very plea agreement which

14

purports to bar him from appealing or collaterally attacking his conviction and sentence." United States v. Puentes-Hurtado, 794 F.3d 1278 (11th Cir. 2015) (internal citations omitted). Therefore, Arias is not barred from his argument that the Government acted in bad faith and breached the terms of his Plea Agreement.

At the outset of this argument, Arias argues that because the Government denied moving for a third level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b), the Government breached the Plea Agreement. In doing so, Arias relies upon the Government's representations within the Plea Agreement that were made to induce him to enter a guilty plea, and he did so based on his reasonable reliance that he would receive the benefit of the bargain, i.e. a third level for acceptance of responsibility by not making the Government have to prepare for trial.

"A plea agreement must be construed in light of the fact that it constitutes a waiver of substantial rights requiring that the defendant be adequately warned of the consequences of the plea." Hunter, 835 F.3d 1320, citing United States v. Jeffries, 908 F.2d 1520, 1523 (11th Cir. 1990). "A material promise by the government, which induces a defendant to plead guilty, binds the government to that promise." United States v. Thomas, 487 F.3d 1358 (11th Cir. 2007). Therefore, "the government breaches a plea agreement when it fails to perform the promises on which the plea was based." Hunter, 835 F.3d 1320.

15

In the present case, the record before this Court demonstrates that Arias was induced to plead guilty directly by the promises made in his Plea Agreement and thereafter the Government breached those promises. It is important to note that as a result of Arias executing the Plea Agreement in this matter, he was expecting to receive a notable benefit from the Government: the third level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

Much like the defendant in Hunter, when this Court recognized "[t]he government did not drop any counts in the indictment or promise to make any other recommendations to the court that might potentially reduce Hunter's sentence," the record in Arias' case is clear; he pled guilty, as charged, based on his reasonable belief that in exchange he would receive the third level downward adjustment for his acceptance of responsibility. This Court should objectively look at Arias' understanding of his Plea Agreement at the time he executed it, rather than in a "hyper-technical" or "rigidly literal" manner. See Hunter, 835 F.3d 1320.

The terms of Arias' Plea Agreement provided that the Government would not oppose his request for a two (2) level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). (Doc. 387, p. 4 ¶ 7). Further, the Government agreed, at the time of sentencing, to move for an additional one (1) level downward adjustment pursuant to U.S.S.G. § 3E1.1(b). The Government breached those promises, based on a flawed argument that Arias' testimony at

16

Sentencing breached the other terms contained in his Plea Agreement. This Honorable Court should render the Plea Agreement a nullity.

A day before day Sentencing in this matter the Government filed its Notice of Withdrawal of Acceptance of Responsibility (Doc. 406) and put Arias on notice that the Government would not be moving for the three levels for acceptance of responsibility. The Government based its withdrawal of the three levels on Arias' "lying under oath while the parties had a binding plea agreement." (Doc. 406 p. 1). In support of the misplaced argument, the Government contends that Arias' "lying under oath" was in violation of Section A.8 and A.10.b of the Plea Agreement; however, both sections referenced by the Government in its Notice (Doc. 406) related to the parties obligations in connection with any cooperation and/or substantial assistance provided to the Government. Because Arias did not provide cooperation or substantial assistance, those sections of the plea agreement have nothing to do with withdrawing Acceptance of Responsibility.

U.S.S.G. § 3E1.1 discusses the prerequisites of a motion made by the Government in moving for the third level of acceptance of responsibility pursuant to Subsection A. First, the offense level must be sixteen (16) or higher before the application of Subsection A. Second, the defendant must have "assisted authorities in the investigation and prosecution of his own misconduct **by timely notifying authorities of his intention to enter a plea of guilty** . . ." U.S.S.G. § 3E1.1(b).

Those are the two requirements of a motion pursuant to U.S.S.G. § 3E1.1(b).

Application Note 6 of U.S.S.G. § 3E1.1 states that "[t]he government **should not** withhold such a motion based on interests **not identified in § 3E1.1**, such as whether the defendant agrees to waive his or her right to appeal."  In Arias' case, the Government predicated its refusal to move for the third level, an obvious breach of the Plea Agreement, on interests outside of § 3E1.1, specifically, that Arias made false statements under oath during this Sentencing in comparison to the factual basis of the Plea Agreement (a factual basis written by the Government not the Appellant).  The sections of the Plea Agreement relied upon by the Government do not support their not moving for the third level of Acceptance of Responsibility.

The Government induced Arias to plead guilty as charged based on promises made within the Plea Agreement.  Arias relied on those promises and the Government failed to deliver on those promises.  As such, the Government exercised bad faith in breaching the Plea Agreement and this Court on *de novo* review should find the Plea Agreement to be breached by the Government in bad faith, vacate the sentence, and remand the case back to the District Court.

## II.    THE DISTRICT COURT ERRED IN DETERMINING ARIAS WAS A MANAGER OR SUPERVISOR OF THE CONSPIRACY.

The Government called a single witness, in this case a DEA Agent, to prove beyond a preponderance of evidence that Arias was a manager or supervisor of others. The Agent provided no first-hand knowledge of relevant facts in support of Aria being a manager or supervisor of others.

In the Initial PSR, U.S. Probation alleged that Arias was a manager or supervisor of the conspiracy because he "recruited" other participants.  (Doc. 392 ¶¶ 11 and 56).  Arias timely filed written objections to these allegations.  (Doc. 412, p. 29 ¶ 11 and p. 33 ¶ 56).  During Sentencing, the District Court, based on the testimony of Agent Albanese[3] in an attempt to establish that Arias was a manager or supervisor stated in reading the proffers of co-defendants, in his opinion, Arias "recruited" three other individuals.  Neither Agent Albanese, the Government, or the District Court ever tried to unpack what "recruitment" meant to Agent Albanese or what facts supported the conclusion that someone was "recruited."  For instance, is bringing an investor into a conspiracy actually a "recruitment?"  And, is an investor *per se* being managed or supervised?   Because there are no facts in the record, neither of the these proposed questions can be

---

[3] As to the credibility of Albanese's testimony, the following exchange occurred, "THE COURT: [t]he only witness you called was the agent, who was less than spectacular.  AUSA: I completely agree, Your Honor.  It was a profound disappointment."  (Doc. 432, p. 20:21-24).

answered in the affirmative.   Despite the lack of a record to support the

conclusion, the District Court ultimately applied the manager/supervisor

enhancement pursuant to U.S.S.G. § 3B1.1(b).  Arias argues that the District Court

erred in this enhancement because the Government failed to meet its burden in

establishing Arias was a manager or supervisor of others.

For sentencing purposes, in making factual findings, the District Court may

base its findings on facts admitted by the defendant through a guilty plea,

undisputed statements in the presentence investigation reports, and evidence

presented at trial.  See United States v. Evans, 958 F.3d 1102, 1109 (11th Cir.

2020).  In the present case, Arias neither admitted to facts in his Plea Agreement

that he was a manager or supervisor and he also disputed statements in the Initial

and Final PSR that alleged he was a manager or supervisor.  Therefore, the

Government had the burden at Sentencing, by presentation of evidence, that Arias

was a manager or supervisor.

When a defendant challenges the factual basis of his sentence, the

Government has the burden of proving the disputed fact by a preponderance of the

evidence.  See United States v. Rodriguez, 732 F.3d 1299, 1305 (11th Cir. 2013).

The Government is required to satisfy this burden with "reliable and specific

evidence."  Id.  The District Court is not permitted to "speculate concerning the

existence of a fact which would permit a more severe sentence under the

20

guidelines." Id. If the Government fails to satisfy its burden, the District Court is required to disregard that fact. See United States v. Philidor, 717 F.3d 883, 885 (11th Cir. 2013). The District Court should have disregarded the factual conclusory allegation that Arias "recruited" other individuals in the conspiracy because the Government failed to provide factual "reliable and specific evidence" by a preponderance of the evidence. There are simply no other facts to define what is meant by "recruitment' and no facts to support that this term "recruitment" means that Arias managed or supervised anyone. In fact, at best appears that Arias and the CS Giraldo brought together two investors to form a DTO but that on its own does not define managerial or supervisor roles within the DTO.

The Government relied on the testimony of Agent Albanese in its attempt to prove the disputed fact that Arias "recruited" others and therefore was a manager or supervisor. As the District Court noted, the testimony of Agent Albanese was "less than spectacular." (Doc. 432, p. 20:21-22). Agent Albanese offered no testimony as to how Arias "recruited" other individuals, but simply testified that Arias "recruited" investors Rincon and Cardona and also "recruited" Velazquez to teach him how to conceal drugs in packages. There was no testimony Arias managed or supervised Velazquez only that Velazquez taught Arias how to conceal drugs.

The District Court failed to list any facts, and the record did not contain any

21

facts, that this Honorable Court can, in review, reliably determine by a preponderance of the evidence that Arias was a manager or supervisor of others. The Government did not make a factual record from proffers, debriefings, or post-*Miranda* interviews, as to how Arias allegedly managed or supervised the two investors and Velazquez who taught Arias how to conceal drugs in packages. To say Arias "recruited" others is a legal conclusion, and in this particular case it was a legal conclusion that resulted in a greater sentence under the sentencing guidelines. However, the Government did not put forth any factual evidence to support that legal conclusion.

Based on the Government's lack of evidence offered at the Sentencing, the District Court created clear error in finding that the term "recruiting" others, without more specific and supporting facts, creates a *per se* basis to support an enhancement for being a manager or supervisor of others.

## **CONCLUSION**

**WHEREFORE**, the Appellant, YEISON SALAZAR ARIAS, respectfully requests that this Honorable Court find that the Government violated the terms of the Plea Agreement in this matter and did so in bad faith.  The Government induced Arias to plead guilty, as charged, and in doing so represented to him that he would receive a three (3) level downward adjustment for acceptance of responsibility.

The Government failed to fulfill the promises it made to Arias. Arias requests that this Court find the Plea Agreement a nullity and remand this case back to District Court for further proceedings consistent with this decision.

Further, Arias argues that the District Court erred in determining he was a manager or supervisor of the conspiracy.  Arias requests that this Honorable Court remand this matter for resentencing should it not find the Plea Agreement a nullity.

Respectfully submitted,

_____*/s/ Jeffrey G. Brown*_____
JEFFREY G. BROWN, ESQ.
Brown Doherty Little
450 Carillon Parkway, Ste. 120
St. Petersburg, FL 33716
(727) 299-0099, Ext. 1 T
jeff@lawbdl.com
Attorney for Defendant-Appellant

23

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B)'s type-volume requirement. As determined by Microsoft Office Word 10's word-count function, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and 11th Circuit Rule 32-4, this brief contains 4,881 words.

2.    This brief further complies with Federal Rule of Appellate Procedure 32(a)(5)'s typeface requirements and with Federal Rule of Appellate Procedure 32(a)(6)'s type-style requirements. Its text has been prepared in a proportionally spaced serif typeface in roman style using Microsoft Office Word 10's 14-point Times New Roman font.


Dated: <u>March 24, 2023</u>              <u>    /s/ Jeffrey G. Brown            </u>
                                          JEFFREY G. BROWN, ESQ.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that the original and four (4) copies of the foregoing have been furnished by U.S. Mail to the U.S. Court of Appeals, Eleventh Circuit, located at 56 Forsyth Street, N.W., Atlanta, GA  30303, and that true and correct copies of the foregoing have been furnished by U.S. Mail to the following interested persons on this <u>*24th*</u> day of <u>*March*</u>, 2023:

United States Attorney's Office
Julia R. Kapusta, AUSA
Appellate Division
400 North Tampa Street, Suite 3200
Tampa, FL  33602

Yeison Salazar Arias, Appellant
Fort Dix FCI
USM# 12897-509
P.O. Box 2000
Joint Base MDL, NJ  08640

_____*/s/ Jeffrey G. Brown*_____
JEFFREY G. BROWN, ESQUIRE
Brown Doherty Little
450 Carillon Parkway, Ste. 120
St. Petersburg, FL 33716
Telephone: (727) 299-0099, Ext. 1
Florida Bar Number 832431
jeff@lawbdl.com
Attorney for Defendant-Appellant

25